# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| R Alexander Acosta,<br><br>    Plaintiff,<br><br>v.<br><br>Austin Electric Services LLC and Toby Thomas,<br><br>    Defendants. | No. CV-16-02737-PHX-ROS<br><br>**ORDER** |

Plaintiff Secretary of Labor ("the Secretary") alleges Defendants Austin Electric Services LLC and Toby Thomas, Austin Electric's president (collectively, "Defendants"), failed to pay employees overtime compensation and to keep employee records, in violation of the Fair Labor Standards Act ("FLSA"). Before the Court are cross-motions for summary judgment (Doc. 111) and summary adjudication (Doc. 114) on the same issue: Whether Defendant Toby Thomas is an "employer," therefore individually liable, under the FLSA.

## BACKGROUND

Austin Electric is a residential electrical contractor based in Arizona.[1] (Docs. 115 at 1:25–26; 126 at 1:21.) Its employees do electrical work on houses in the area. Toby Thomas founded Austin Electric in 1997.[2] (Docs. 115 at 2:4–5; 126 at 2:7.) In 2011,

---

[1] Unless otherwise noted, factual statements included in the Court's summary are undisputed.
[2] All of Defendants' evidentiary objections based on relevance are overruled. (Doc. 126.) The issue of whether Defendant Thomas is an "employer" under the FLSA requires a totality of circumstances analysis. *See Guifu Li v. A Perfect Day Franchise, Inc.*, 281

during the economic downturn, Thomas approached Scott Tonn and Don Tapia about a potential equity purchase of the company. (Doc. 115-1 at 9:25–10:2.) Tonn and Tapia both purchased shares: From 2013 through 2016, Tonn held majority ownership and Tapia held minority ownership of Austin Electric. (Doc. 115–1 at 9:4–20). Thomas was minority owner of Austin Electric from 2013 through 2016, as his ownership interest ranged from 20 to 30 percent. In 2013 and 2014, Thomas' ownership interest was 20 percent. In 2015 and 2016, Thomas' ownership interest was 30 percent. (Doc. 115-1 at 8:9–19.) Tonn and Tapia are both inactive owners and play no role in the operations of the company. (Doc. 115-1 at 9:18–20.)

Thomas is the president of Austin Electric. (Doc. 115-1 at 7:16–17.) Joe Church is Vice President of Operations at Austin Electric and reports directly to Thomas. (Doc. 115-1 at 10:21–25; 11:23–24.) The parties do not state whether Austin Electric has a Board of Directors; nor do they state the existence of a CEO, CFO, or any other possible corporate officers. According to Thomas's deposition testimony, Austin Electric employs office workers, warehouse workers, and field workers. Approximately 15 employees work in the office. (Doc. 115-1 at 99:6–9.) They include, among others, a scheduling manager, safety manager, estimator, and hiring manager. (Doc. 115-1 at 99–100.) Jennifer Thomas, Toby Thomas's wife, also works in the office in accounts payable. (Doc. 115-1 at 100:21–22.) Austin Electric employs approximately eight warehouse workers who staff the warehouse where field workers go and pick up their supplies. (Doc. 115-1 at 97:11–22.) The majority of Austin Electric's employees are field workers. Field workers are paid either by the hour or by the piece (each task they complete). Thomas testified that in 2013, there were approximately 100–150 hourly workers and 80–100 pieceworkers. (Doc. 115-1 at 91:3–92:9.)

---

F.R.D. 373, 397 (N.D. Cal. 2012). The Court finds that all factual statements in the Secretary's Statement of Facts (Doc. 112) are relevant. *See, e.g.*, *Herman v. RSR Sec. Services Ltd.*, 172 F.3d 132, 140 (2d Cir. 1999) ("Appellant contends that such cannot be the basis for liability because two of those three occasions occurred before the period giving rise to liability, but this contention is not a relevant consideration in determining his status as an employer.").

Church's role as Vice President of Operations is to run the day-to-day operations, including scheduling, office production, and contracts. Church also oversees the fleet, personnel, and safety at the company. (Doc. 115-1 at 11:17–22.) Church began working at Austin Electric in 2003. (Doc. 115-1 at 191:2–3.) The parties dispute over who hired Church: Thomas testified that he hired Church while Church stated he was hired by Robert de Markowitz.[3] (Doc. 115-1 at 11:3–4; 191:4.) Thomas promoted Church to Vice President of Operations in 2014. (Doc. 115-1 at 11:8–13.) Currently, Thomas sets the salary for Church. (Doc. 115-1 at 12:4–5.)

Below Church is Rodolfo Becerra, Austin Electric's Field Operations Manager. Thomas hired Becerra in early 2005. Thomas also promoted Becerra to his current position in 2007. (Doc. 112-1 at 28:22 – 29:5.) As Field Operations Manager, Becerra oversees Austin Electric's field employees alongside Church. (Doc. 112-1 at 31:9–15.) For example, Becerra and Church handle employee discipline. (Doc. 112-1 at 49:9–12.) Becerra and Church also determine the vehicle reimbursement rate for employees who use their own vehicles for work. (Doc. 112-1 at 20:16–21.) Becerra manages approximately 20–25 field managers, who manage assistant field managers and the field workers in turn. (Doc. 115-1 at 94–96.) Becerra reported to Thomas "years ago" and now reports to Church. Church sets Becerra's current salary. In the event of Church's absence, however, Becerra goes to Thomas for decisions. (Doc. 115-1 at 12:23–13:22.)

As President of Austin Electric, Thomas has the power to hire and fire employees, although he has not exercised this authority in the last six or seven years. (Doc. 115-1 at 20:15–16; 174:6–7.) Thomas also has the authority to set employees' pay rate but testified he does not set or know the current pay rate, although he does know the formula used to calculate the pay rate. (Doc. 115-1 at 16:6–9.) Austin Electric pays pieceworkers a rate based on the livable square footage of the house they wire. (Doc. 115-1 at 16:21–17:8.) An informal committee determines the rate per square footage paid to

---

[3] The parties do not state who Robert de Markowitz is or was; nor do they indicate his relationship to Austin Electric.

pieceworkers. (Doc. 115-1 at 17:18–19.) Church testified the pay-rate-setting process involves himself, Becerra, estimator Jeremy Forgia, and Thomas. Church and Becerra "come up with what [they] think is a fair rate" and then show it to Thomas and Forgia for review. (Doc. 115-1 at 208:24–209:5.) Church further testified the four members "all agree whether or not we can afford that rate. If we say yes, then we change the rate." (Doc. 115-1 at 209:3–5.) Church also stated he "won't change the piece value rate without discussing it first with Mr. Thomas, but ultimately [Thomas] is probably going to defer to [Church's] decision." (Doc. 115-1 at 209:22–25.) Although Church indicated he believes he is entitled to set pay rate without Thomas, he consults Thomas before making the decision "out of respect" for Thomas. (Doc. 115-1 at 210:5–6.) Importantly, nowhere in the depositions or motion papers do Defendants dispute the accuracy of Church's testimony. Rather, they appear to argue it is significant that Thomas does not know the current pay rate but "simply confirms that Austin Electric can afford a rate change determined by Mr. Church and Mr. Becerra." (Doc. 125 at 5.) Additionally, Thomas testified he decides the method of payment (cash or check) and whether employees receive benefits. (Doc. 115-1 at 18:21–19:17.)

Prior to 2013, Thomas made the decision to treat pieceworkers as independent contractors rather than employees. (Doc. 115 at 3:24–25.) Sometime around 2013, Thomas decided to reclassify independent contractors as employees. Thomas testified that he began maintaining employment records for pieceworkers around this time. (Doc. 115-1 at 21:11–15.) During the reclassification, Thomas personally researched the correct method of calculating wages for pieceworkers—by "convert[ing] the piece rate into the number of hours they worked." (Doc. 115-1 at 177:21–178:18.) Thomas admitted that although Austin Electric had inadvertently applied the incorrect calculation for a few weeks, Thomas remedied the situation by working with his payroll staff to implement the correct calculation method. (Doc. 180:22–181:4.)

Thomas has the authority to set pieceworkers' work schedule but apparently does not exercise this authority. Thomas's testimony indicates that "nobody in the company

sets schedules over the piece employers" and it is "entirely up to the pieceworkers when or if they want to work." (Doc 115-1 at 173:14–17.) The Secretary disputes this statement, noting that scheduling manager Jose Ballesteros testified that Austin Electric determines when to assign pieceworkers to do electrical work and how many of them are required for each particular job. (Doc. 128-1 at 4:11–20.)

**LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In reviewing a motion for summary judgment, all evidence must be construed in the light most favorable to the non-moving party.

Here, both parties move for summary judgment on the same issue. "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Wash.*, 783 F.3d 1151 (9th Cir. 2015) (quoting *Fair Hous. Council of Riverside Cty. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)).

**ANALYSIS**

The FLSA provides: "'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). "Employer" under the FLSA is given "an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999) (quoting *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1999)). While "a defendant's status as an employer under the FLSA

is a question of law . . . the legal determination rests on 'subsidiary factual [findings.]" *Solis v. Velocity Express, Inc.*, No. CV 09-864-MO, 2010 WL 2990293 (D. Oregon July 26, 2010).

Whether or not an individual qualifies as an employer depends on if the individual "exercises control over the nature and structure of the employment relationship, or economic control over the relationship." *Lambert*, 180 F.3d at 1012. In analyzing control, the Ninth Circuit applies an "economic reality" test that asks whether the individual in question has "significant ownership interest with operational control of significant aspects of the [company's] day-to-day functions." *Id.* at 1012; *Bonnette*, 704 F.2d at 1469. Courts typically consider whether the alleged employer: (1) Has the power to hire and fire employees; (2) determines the rate and method of payment; (3) supervises and controls employee work schedules or conditions of employment; and (4) maintains employment records. *See, e.g.*, *Solis v. Best Miracle Corp.*, 709 F. Supp.2d 843, 850 (C.D. Cal. 2010). No one factor is dispositive. Rather, courts take into account the "circumstances of the whole activity." *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 397 (N.D. Cal. 2012) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)); *see also Lambert* at 1012 (also taking into account the individual defendant's ownership interest of the company); *Baird v. Kessler*, 172 F. Supp.2d 1305, 1311 (considering whether defendants "control the purse strings" that support plaintiffs' jobs).

Here, ample undisputed evidence in the record establishes that Thomas has significant ownership as well as operational control of significant aspects of Austin Electric's day-to-day functions. Thus, Thomas is an "employer" under the FLSA.

The parties do not dispute that Thomas has significant ownership interest in Austin Electric—from 2013 to 2016, his ownership ranged from 20 to 30 percent. (Doc. 115-1 at 8:9–19.) Not only does Thomas own a significant share of the company, he was and remains the only active owner. The other two owners—Scott Tonn and Don Tapia—are inactive. (Doc. 115-1 at 9:18–20.) Further, Austin Electric does not appear to have a

Board of Directors and/or other corporate officers. Thus, Thomas, as an active owner and president, is at the very top of the company's hierarchy, without competing managers. (Doc. 115-1 at 94:25–94:5.)

Thomas himself admitted during his deposition that he has the power to hire and fire employees. (Doc. 115-1 at 20:15–16; 174:6–7.) However, Defendants argue that Thomas has not actually exercised this power in the last six or seven years. Assuming this is true, this factor still weighs against Defendants. The Court considers whether Thomas has the "*power* to hire and fire employees," not whether he currently exercises that power. *Lambert*, 180 F.3d at 1012; *see also Orquiza v. Bello*, 634 Fed. App'x 605, 605 (9th Cir. 2016) ("We question whether Bello had the power to hire and fire. The district court's analysis of this question, which focused on whether Bello *actually* hired or fired, is inapt.").

Furthermore, Thomas has significant control over employee compensation. Thomas admitted during his deposition that he decided employees' method of payment, as well as whether they receive benefits. (Doc. 115-1 at 18:21–19:17.) While Defendants maintain that Thomas neither sets nor even knows the pay rate of pieceworkers, Thomas's own testimony suggests otherwise. Importantly, even if Thomas does not know the current rate per square footage, Thomas testified that he personally researched and determined the correct formula for calculating pay rates. (Doc. 115-1 at 177:21–178:18.) Thomas then implemented the formula through working with his payroll staff. Specifically, Thomas testified that when his research revealed Austin Electric's previous methodology was incorrect, he "went to Monica Paloma [in payroll] and . . . said this is wrong, we have been doing it wrong, we need [to] do it right." (Doc. 115-1 at 182:1–3.)

Church, Vice President of Operations, testified in detail regarding the process of setting pay rate. Church testified that he and Becerra first "come up with what [they] think would be a fair rate," and subsequently "present it and show it to [Thomas]." (Doc. 115-1 at 208:10–209:5.) After reviewing the rate, Thomas and Forgia confirm the

company "can afford that rate." (Doc. 115-1 at 109:4.) Notably, Defendants do not argue that Church's testimony is false. Instead, Defendants argue that Thomas "simply confirms that Austin Electric can afford a rate change determined by Mr. Church and Mr. Becerra," rather than actually setting the pay rate. (Doc. 125 at 5.) "To be classified as an employer, it is not required that a party have exclusive control of a corporation's day-to-day functions." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966 (6th Cir. 1991). In *Dole*, the court concluded that a company president had significant control when "he generally made arrangements for the amount of salary to be paid an employee, [but] the actual details of calculating the hours, overtime, and commission were handled by the payroll bookkeeper." *Id.* Similarly, here, Thomas need not participate in every stage of the pay-rate-setting process to demonstrate significant control. Thomas determines pieceworker compensation by (1) setting the formula through which employees' wages are calculated, and (2) reviewing the pay rate to confirm the company can afford it. Thus, the factor of determining the rate and method of payment must weigh against Defendants. Although no factor is dispositive in the analysis of Thomas's individual liability under the FLSA, whether or not Thomas determined pieceworkers' pay rates is particularly significant in this case, where the pay rate of pieceworker employees goes to the crux of the alleged FLSA violations.

The factor of maintaining employment records also weighs against Defendants. During his deposition, Thomas was asked: "[A]fter you made the decision to reclassify field workers from independent contractors to employees, did you start maintaining employment records?" Thomas answered: "Yes." (Doc. 115-1 at 21:11–15.) Defendants contend that certain employment records (for example, disciplinary records) are maintained by Jennifer Diaz and Gabriela Beruman of Austin Electric's Payroll/Human Resources Department. (Doc. 112 at 4:21–25.) Even assuming that Diaz and Beruman maintain certain records, there is no reason to believe that Thomas—contrary to his own testimony—does not also maintain employment records.

Finally, the parties dispute how employee schedules are determined for pieceworkers. Thomas's testimony indicates employee schedules are determined on a purely voluntary basis: "It is entirely up to" the pieceworkers if and when they want to work. (Doc. 115-1 at 174:16–17.) According to Thomas, "nobody in the company" exercises the power of setting schedules for piece employees. (Doc. 115-1 at 174:14–15.) Ballesteros's description of setting employee schedules, however, contradicts Thomas's testimony. Ballesteros testified he receives schedules from the office telling him which houses need work and when the work needs to be complete, and Ballesteros assigns employees to the houses accordingly. (Doc. 128-1 at 4:11–20.) The dispute over this single factor, however, does not preclude finding individual liability. The weight of the evidence—when considering the other factors and the circumstances of the whole activity—supports finding that Thomas is an employer under the FLSA.

Accordingly,

**IT IS ORDERED** Defendants' Motion for Summary Judgment (Doc. 111) is **DENIED** and the Secretary's Motion for Summary Adjudication (Doc. 114) is **GRANTED**.

Dated this 13th day of November, 2018.

Honorable Roslyn O. Silver
Senior United States District Judge